Good afternoon. May it please the Court, I'm Daniel Kaplan. I represent the appellant, Adalberto Murguia-Rodriguez. I'm going to watch the clock and attempt to save about two minutes of time for my rebuttal. In my brief, I am raising four claims. The time we have is short. I don't know which ones the Court would prefer to talk about. Absent a cue, I'm going to hope to talk about at least the first two issues. The first issue has to do with a stipulation that admitted to all but one of the elements of the one count of which Mr. Murguia-Rodriguez was convicted. The second one has to do with the interpreter having been released from the courtroom at the sentencing hearing. Turning to the stipulation issue first, clearly a stipulation of this nature waves into important rights that the defendant normally would have, the right to have a jury find facts, and most crucially, the right to put the government to its proof as far as all of the factual elements of an offense. In this case, the stipulation waived those rights for Mr. Murguia-Rodriguez with respect to all of the elements of the possession of drugs conviction except for the element of his knowledge. In the Adams-on-Bank decision, this Court stated that due process demands that if a defendant is going to stipulate to facts, which fall short of an actual guilty plea, and Rule 11 is not an issue here, but a constitutional protection does exist, to a stipulation of this nature, and that is that the defendant must knowingly and voluntarily be agreeing to engage in entering into that stipulation. In Ferreira-Alameda, this Court stressed that the district court has a responsibility to ensure that a stipulation is entered into knowingly and voluntarily. Now, in the Therabove case, as I acknowledged in the briefs, this Court stated that ordinarily if a stipulation is entered into in open court in the presence of the defendant, no objection is made, that it's deemed to be adequate evidence that the stipulation was knowingly and voluntarily. And he had counsel, too. I beg your pardon? He had counsel, too. He had counsel. My position is that this is not the ordinary case, and this is why. Because the stipulation obviously admitted, the crucial stipulation, part of the stipulation I'm focusing on, that the substance, that the government actually found a quantity of marijuana in the back of the truck Mr. Maguire-Rodriguez was driving. When Mr. Maguire-Rodriguez took the stand and testified, the first question he got was, so you were driving a truck with approximately 130 pounds of marijuana in the back, and his answer was no. The cross-examination continued on with many questions along these lines, and Mr. Maguire-Rodriguez repeatedly said answers to the effect of, look, I didn't know anything was back there. I didn't see any marijuana back there. I didn't smell marijuana back there. I only know that my lawyer told me. I only know that you or the prosecutor are telling me. I only know what the paperwork says. Now, in light of those things emerging during the cross-examination, this is a case in which the district judge, for whatever reason, decided not to engage in any colloquy with the defendant on the record, as would have been prudent, although not demanded under Federal law. What evidence is there that any of that's wrong? Did you try the case? No. Okay. But the case was basically tried on. He didn't know it was there, right? Correct. Not that it didn't exist. He didn't know it was there. So what evidence is there that all of that was wrong? Well, there was no evidence that any of that was right. There was only a stipulation. Well, because there was a stipulation. Correct. So I understand the point. There's no – the defendant did not affirmatively prove the absence of the drugs, except for saying he couldn't smell them. Arguably, that was something. But I believe the most on point case is the DeWilliams case from the Tenth Circuit, which addressed that issue and said, look, clearly this is prejudicial to the defendant because there, as in this case, there was no other evidence. There was no evidence apart from the stipulation to establish this elemental fact. And we, the appellate court — You know, that's a – as far as I know, that's a very common stipulation, and the fact is not very hard to – in the usual case, very difficult to establish. I don't know. Just bring all the witnesses in and have everyone testify. And there's benefit to the defendant not having all that evidence come in. I really don't understand why it's such a big deal, the stipulation, at all. You know, maybe there was some, what you consider improper, questioning by the AUSA about, you know, trying to infer because the stipulator had knowledge, but, you know, that's a different issue. Well, the defendant did make clear – he did have the opportunity to make clear in cross-examination that he didn't have any knowledge. The reason that this is prejudicial and unfair to the defendant is that the circumstances of what came out on the cross-examination, the way he answered, he never said, look, I was – I understand that the substance was tested and found to be marijuana. He didn't indicate that he had any basis at all for – You know, you've used over half your time. If you want to get to your second point. I will do that, Your Honor. In the very – The problem with that is, you know, I mean, he wasn't properly prepared for his testimony by his own lawyer. Well, it raises the question – That's the problem with his testimony, frankly. Well, it's the same lawyer who perhaps on this record might be suspected of not having informed adequately the defendant about the nature and consequences of the stipulation. But I will turn to the interpreter question. At the very beginning of the sentencing hearing, the district court said to the defendant, to Mr. Miguel Rodriguez, I understand that the interpreter says you would like to proceed in English today at the sentencing. Mr. Miguel Rodriguez confirmed he wanted to proceed in English. The court then asked, well, can we let the interpreter leave the room, or would you like her to stay and help? He said she can stay. The judge then pressed Mr. Miguel Rodriguez to let the interpreter go, saying she has other duties. At that point, he agreed that she could leave the room. Well, but it wasn't that he's the one that brings it up. He had had an interpreter at the trial. It's not like he's been denied an interpreter. He knows what it's like to sit there with a thing in your ear and someone talking at you and the whole thing. And he went through the trial, and he decided I'd rather go without an interpreter. That's what he tells the court. He does – he talks at the sentencing as well, doesn't he? He does, yes. And he seems to be responsive to the questions, you know, anything when people – he doesn't – there's nothing loony in there, like that he doesn't end up, you know, saying, well, what color is this, and that he says, I would like to go to the bathroom, in response to what color something is. He seems to be completely responsive to what's going on. It doesn't look like he, you know – and he may have felt that he would rather say it in English, that that was a better mode for him to ask for the mercy that he wants from the court, right? Well, immediately – So then do we have to force him to have an interpreter? I'm going to dispute – If he says a, you know – I would like to dispute the first part of what you said. And a lawyer who's been dealing with him doesn't say, oh, no, I want him to have an interpreter because I've been having trouble speaking with him. That's true. The first thing that happens after the interpreter evidently leaves the room is the  lawyer explain to you, you know, how the sentencing – what the presentence report said or something. And then the judge has to press him to clarify that his answer, instead of no, should be yes. So right off the bat, there's problems. Then it goes on. He tries to give an allocution, which I think you can see from the record, his allocution is quite incoherent. It doesn't look at all like the interpreter-assisted statements that the trial record has. And then a few pages later, on page 213, the judge, for some reason, has to say, are you listening, apparently, to the defendant, who perhaps was trying to get his lawyer to explain things to him? There is – in other words, there are affirmative indications that he did have trouble communicating and understanding at the sentencing. And the Court Interpreters Act – Does he ever say during that, I'm just not getting what's going on, Your Honor, bring the interpreter back? Does the lawyer ever say, my client doesn't understand what's going on? He does not. The lawyer does not. But the Court Interpreters Act sets strict requirements for waiver of an interpreter. And there's no dispute here that those requirements were not followed. I would like to reserve the balance of my time. Good afternoon, Your Honors. May it please the Court, my name is Carmen Corbin, and I'm an Assistant U.S. Attorney in the District of Arizona. Let me cover the two matters that the appellate counsel just spoke to. Can you start with the interpreter one? The interpreter one? Okay. Thank you. Yes, so at the sentencing, Judge Callahan, as you've already noted, the defendant came into the sentencing hearing, and on the record, he is the one that brought up the request to proceed in English for the sentencing hearing. He asked to proceed in English, and appellate counsel called the... So the judge said that he was informed by the interpreter? Who was he informed by that the defendant wanted to proceed in English? I believe it was the interpreter had informed her. So that he was told that the defendant wanted to speak English? Exactly. I think that the interpreters, at least in our courtrooms in Tucson, Arizona, they sit next to the judges, so it was possible that was why that communication happened with the judge, between the judge and the interpreter. But she was notified that the defendant wanted to proceed in English. They had this back-and-forth exchange where she confirms that with him, and as appellate counsel... Did he say, I don't want to have an interpreter present, or he said, I want to speak English? He said, and I quote, I feel comfortable proceeding in English. And he asked to proceed in English. Well, you can proceed in English and still have an interpreter, can't you? That's true, Your Honor. But I think that the conversation was clearly, between the judge and the defendant, was about the interpreter remaining in the courtroom and assisting him, as Judge Callahan has noted. But first he said, yes, she can stay, and then the judge said, well, you know, she's got more important things to do. Well, I think that the judge said that she has other duties. But then she said, do you feel comfortable... She's got other duties, other things to do. They said, well, okay, then she can go. Does that comply with Section D-1 as to what the judge's duties are before it constitutes a waiver? I believe so, Your Honor. And, again, to clarify, I believe that what happens is she does mention that there seems to be some miscommunication, and she does mention that the interpreter has other duties, and she says to him, do you feel comfortable proceeding in English? And instead of responding yes or no, he lays out an entire sentence of I feel comfortable proceeding in English. And so I believe that the government's argument is that based off of those statements and his own request that he proceed in English and that the interpreter can be dismissed, that either that takes him outside of the Interpreter's Act, where basically he becomes not entitled to an interpreter, or he has waived that interpreter. The record says such a waiver shall be effective only if approved by the officer and made expressly by the individual on the record, and then you skip a lot of other things. After the judge signed the record, explained the nature and effect of the waiver, right? That's correct. And did the judge explain the nature and effect of the waiver? Your Honor, the judge did not put into specific words the nature and effect of the waiver, but as Judge Callahan has noted, the defendant did proceed through an entire trial with an interpreter. It's not that he wasn't aware what it meant to not have an interpreter there and what it did mean to have an interpreter there. So your answer is that the judge is excused from the statutory duty of explaining the nature and effect of the waiver? Not at all, Your Honor. Well, isn't that what you just said? He sat through a trial, so the judge didn't have to explain the nature and effect. I thought that's what you were attributing to Judge Callahan. No, I'm sorry if I've misstated that way. Let me ask the question this way. Assuming it was error for the judge not to make that explanation, is that error subject to harmless error review or not? I would believe it would be harmless error. And I also wanted to note, Your Honors, U.S. v. PSY, which is where there was a situation where that referenced where an interpreter was available to the defendant, and when the defendant has waived the right to the interpreter by not taking advantage of the services of the interpreter at the hearing,  the interpreter is made available to the defendant, and he is not taking advantage of the services that are available to him. Were you the trial attorney in this case? I was not, Your Honor. So you were not present at the trial? I was not. So you don't know how the interpreter functioned at the trial? I don't know personally for that specific trial. You know, all I know is what was in the transcripts, and it sounds as though it was the typical trial where the interpreter is there in the courtroom and, you know, translating all the conversations and statements that are made. But, no, I wasn't there. I wasn't present. So I know that there's a lot of cases going on, and there's always interpreters there, and there's a lot of people that speak English and Spanish and the whole thing. But if you look at the statute, do you think that the statute requires more than what was done here? I do not, Your Honor. And as I mentioned, that because of the statements that the defendant makes, I believe it is possible that his statements may have even removed him from the act altogether that he wasn't even entitled to an interpreter at that point. If you look at D-1 of the act, it specifically says that the person is entitled to the interpreter if he speaks only or primarily a language other than English, suffers from a hearing impairment, so as to inhibit such parties' comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witnesses' comprehension of questions in the presentation of such testimony. Was there any determination made as to that? There was no direct determination made by the court. The magistrate? Not on the record, at least. The magistrate didn't make a determination that he was entitled to an interpreter? I have not seen that in the record, but I don't believe that did happen. Didn't the magistrate check a form that determined he was eligible for an interpreter? That may be the case, Your Honor. And I apologize if I've missed that point. But I guess, well, in Arizona, if you say you want one, do you get one? Pretty much. And if you say you don't want one? Right. They're available in the courtroom very easily. They're readily available in the courthouse. If I were tried in Arizona, I would be entitled to an interpreter? I was going to say that I think there's probably limitations to that, obviously, if there's a circumstance where a person doesn't need to be. You didn't talk too much. You might have a chance. Can I move on to some of the other issues, or are there other questions on that? It says interpreter required is what the magistrate found. Then my argument is that at the sentencing hearing, that there is new information presented just by his own statements, that he is not in need of an interpreter, that he understands English language. He orally states his own argument for a sentence in English. He says that he reads English. That's your finding, not the court's finding. Correct. There is information that was found at the hearing, but the court did not make a specific statement about that. I will briefly mention the stipulation. Again, the court did not err when it accepted the factual stipulation into evidence. There's no inconsistency between the defendant's testimony that was presented and the stipulation. Again, as Judge Callahan noted, this was a no-knowledge case. That was the defendant's defense in this matter. So his statements in the testimony about how he had no knowledge of the drugs was part of his defense, and it doesn't go against the actual information that was in the stipulation. Counsel for the appellant notes the DeWilliams case, but as I noted in my brief, I believe that DeWilliams is not at all like this case. How about a remand under 782? 782? The 782 issue, this was a unique situation. In this case, the district court actually already considered the arguments related to the amendment, 782 amendment, from both parties. Now, at the time of the sentencing, 782 had not yet been officially codified, but as the judge noted in her sentencing statements, that she saw it was on the horizon, and so she was considering arguments in this case from both parties as to whether they thought it should apply. And she did consider those arguments, and then she made a ruling or a decision based off of those arguments, and she decided to decline to apply the reduction and explained why. To the extent that the defendant would like the district court to consider this again, the same arguments again, he has filed a motion in the district court for such relief, which is the procedure that should follow. It's pending right now. It's pending. It's stayed until this matter is resolved. So this court does not need to remand that matter because the district court will review it anyway as soon as this matter is resolved. Well, just a minute now. There's a question on this appeal about 782, right? Correct. But what are you saying? That's a different question than the motion that's now pending before the district court? It's the same matter. The motion that was filed by the defendant in this matter pro se, it was filed for the court to re-review the sentence now in light of Amendment 782, which I think is basically what is also being presented to this court, but this court is being asked to remand it to have the court below. Well, that's sort of what I'm getting at. Isn't this part of the appeal moot then? I mean, why should we have to remand it if it's already pending before the district court? I agree. I don't believe this court needs to do anything on that issue. I believe the district court, as soon as this matter is resolved, the district court will go forward on resolving the motion. What should we say in our disposition about the request for 782 remand? Should we say it's not necessary because it is pending before the district court? I had referred in my brief to some of the prior cases, and I filed a 28-J letter that included the United States v. Boykin, which I believe in a footnote this court noted that all the 782 motions basically should be brought before the district court instead of the court of appeals. I'm not sure if this court should state that it's moot or just decline to remand it on that matter. I'm not sure what the legal ramifications below, depending on how this court dealt with it, but I don't believe it's a matter for this court to deal with here. Because it is properly pending before it? Correct. I see I've run out of time. Well, so she also said, though, that even if she said, you know, I'm not going to exercise my discretion, but I guess you can tell him that again or change your mind in the pending matter? Do you mean the order that the court filed? That's before the district court. Because in this case, the district judge said at the time, went through it and said, even if, even if I have to consider 782, I'm still, I'm not going to exercise favorable discretion for you. Correct. Correct. But if this court feels that another review, since at the time of the sentencing it wasn't codified, if another review is appropriate, then it's going, it's going to likely happen anyway, because the defendant has already filed a motion asking for such relief. And the district court will have the opportunity to respond to that. I'm seeing I'm out of time. Thank you. Thank you, counsel. Very quickly on the 782, I actually don't disagree with almost anything that was just said about it. Just one thing I would say is, in light of the order that the district court issued, which I filed in a 28-J letter, it appears the district court may believe that if this court doesn't address the 782, the district court should treat it as moot and not address it. It would be helpful, probably appropriate for this court to say, we decline to address it because it may be addressed in the first instance by the district court. Now, one thing I want to point out is, just now this afternoon is the first time the government has suggested that harmless, that the error with regard to the interpreter could be treated as harmless. Because the government did not raise that point or that argument in its answering brief, this court should treat that argument as forfeited under United States v. Cologne, 620F3-1122, and should not address the question of harmlessness. Is that a question on the standard of review that applies to harmless on a pill? What are you citing that for? I'm citing that for this court's policy of not addressing whether an error is harmless if the government doesn't argue that it's harmless. So, in other words, if it finds the interpreter question is an error, it should just simply grant the relief requested and not ask whether the error was harmless. Is it K-L-O-N-E? K-L-O-E-H-N, from 2010. At the same time, I'd like to point out that it wasn't harmless. As Judge Reinhart's questions, I think, indicate, what the judge presented to Mr. McGeer-Rodriguez was a false dichotomy between conducting the proceedings in English and not having the interpreter stay. Oftentimes, proceedings are conducted in English, but an interpreter is kept on hand to assist the defendant in understanding the proceedings as needed. And that was the suggestion she first made to him, which he agreed to. She then went on to say, well, can't we just let her leave? She has other things to do. So the record does indicate the defendant expressed his clear preference to have the interpreter stay, proceed in English, but have the interpreter stay to help him in case it was required. Were you the trial attorney in this case? No, sir. So you don't know what happened at the trial. You didn't sit through the trial. That's correct. You don't know whether the interpreter interpreted every single English word for the defendant? What I can say – Is that right? That is correct. The record indicates there were multiple interpreters, because there was a reference to the interpreters and having to change them, and that the court mentioned that they were doing yeoman work, which I think suggests that there was a very intense amount of interpretation and assistance going on during the course of the trial. But I defer to the AUSA, who practices in Tucson, about how procedures are in Tucson. I practice in Phoenix. If there are no additional questions. Are those two different countries? Pretty much, Your Honor, yes.  Thank you, counsel. The case at target will be submitted.
judges: Reinhardt, Tashima, Callahan